IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Dominic Javon Gilbert, | ) | C/A No. 6:23-cv-05256-JDA-KFM |
| | ) | |
| Plaintiff, | ) | **REPORT OF MAGISTRATE JUDGE** |
| | ) | |
| vs. | ) | |
| | ) | |
| Dana Aiken, Victoria Albergottie, and Quandara Grant, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on a motion to dismiss filed by defendants Dana Aiken and Victoria Albergottie (hereinafter "the medical defendants") (doc. 90). The plaintiff, who is proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 regarding events that occurred while he was detained in the Beaufort County Detention Center ("the Detention Center"). Pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(e) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in this case and submit findings and recommendations to the district court.

**I. PROCEDURAL HISTORY**

The plaintiff's complaint was entered on the docket on October 19, 2023 (doc. 1). On December 19, 2023, the undersigned screened the plaintiff's complaint pursuant to 28 U.S.C. §§ 1915, 1915A and recommended service of the plaintiff's deliberate indifference claim against some of the defendants regarding medical care for his injured toe (docs. 12, 13). The undersigned further recommended that the district court dismiss the plaintiff's claim against Mediko Correctional Healthcare ("Mediko")[1] (doc. 13). The Honorable Jacquelyn D. Austin, United States District Judge, adopted that recommendation on March

---

[1] The plaintiff filed this claim against "Medicko Correctional Healthcare," but the undersigned will refer to this defendant by its correct name (*see* generally doc. 90-4).

1, 2024, dismissing defendant Mediko with prejudice and without issuance and service of process (doc. 22). On March 22, 2024, the plaintiff filed a motion to amend his complaint (doc. 26). On April 1, 2024, that motion was granted as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1) (doc. 30). The plaintiff's amended complaint was entered on the docket on April 15, 2024 (doc. 33). On April 23, 2024, the medical defendants filed a motion to dismiss the plaintiff's amended complaint (doc. 40). On September 25, 2024, the undersigned issued a report and recommendation recommending that the medical defendants' motion be granted in part and denied in part (doc. 67). Judge Austin adopted that recommendation on October 23, 2024, granting the medical defendants' motion to dismiss with respect to the plaintiff's Eighth Amendment deliberate indifference claims and denying the motion with respect to the plaintiff's Fourteenth Amendment deliberate indifference claims (including his punitive damages request) (doc. 69).

During this time, defendant Colonel Quandara Grant ("Col. Grant"), the Director of the Detention Center, filed a motion to dismiss the plaintiff's amended complaint (doc. 59). On January 16, 2025, the undersigned recommended that the district court deny this motion to dismiss (doc. 84), and Judge Austin adopted that recommendation on February 13, 2025 (doc. 87). Thereafter, Col. Grant filed a motion for summary judgment (doc. 98). When the plaintiff did not file a response to the motion after being advised of the consequences of not responding (docs. 99, 106), the undersigned recommended on June 4, 2025, that the district court dismiss Col. Grant from this action for lack of prosecution (doc. 111). This report and recommendation remains pending before Judge Austin.

As noted, the plaintiff filed this action pursuant to § 1983 regarding events that occurred while he was a pretrial detainee in the Detention Center[2] (doc. 33). The plaintiff

---

[2] The plaintiff filed a notice of change of address in September 2024 indicating that he has been released (doc. 64).

alleges violations of his Fourteenth Amendment rights (*id*. at 3). The plaintiff contends that on July 22, 2023, he dislocated and fractured his left big toe (*id*. at 4, 6). The plaintiff claims that the medical defendants failed to properly treat him, ignored his sick call requests, interfered with his care, refused to provide needed supplies, and disregarded the hospital doctor's orders (*id*. at 6–8). He also alleges that on September 25, 2023, Ms. Albergottie indicated that she was upset that the plaintiff got her written up for failing to respond to his sick call requests (*id*. at 7). The plaintiff alleges that in February 2024, due to arthritis and nerve damage, he was placed on long-term ibuprofen (*id*. at 6, 8). The plaintiff's purported injuries include emotional distress, dislocation/fracture of his toe, and denied medical care for the toe injury, and he seeks compensatory and punitive damages (*id*. at 6).

On February 25, 2025, the medical defendants filed a motion for summary judgment (doc. 90). On that same day, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately to the motion (doc. 91). Because the plaintiff did not file a response to the motion and is proceeding *pro se*, the court filed a second order on April 9, 2025, giving the plaintiff through April 30, 2025, to file his response to the motion for summary judgment (doc. 102). On May 5, 2025, the plaintiff filed an untimely response in opposition to the medical defendants' motion for summary judgment (doc. 105). Accordingly, this motion is ripe for review.

## II. FACTS PRESENTED

As noted above, only the plaintiff's claim for deliberate indifference to medical needs under the Fourteenth Amendment remains against the medical defendants (docs. 67, 69). In support of their motion for summary judgment, the medical defendants submitted their affidavits (docs. 90-2, 90-3), the plaintiff's Mediko medical records (doc. 90-4), the plaintiff's medical records from Beaufort Memorial Hospital (doc. 90-5), and the plaintiff's inmate requests/complaint forms from the Detention Center (doc. 90-6). The medical

defendants are nurses who were employed by Mediko and provided medical care to the inmates at the Detention Center (doc. 90-2 at 1, Aiken aff. ¶ 2; doc. 90-3 at 1, Albergottie aff. ¶ 2). On July 22, 2023, the plaintiff reported that he broke his left big toe (doc. 90-4 at 21), and Ms. Albergottie escorted the plaintiff to Dr. Garman who examined him, ordered an x-ray, and prescribed him over-the-counter pain medication (doc. 90-3 at 2, Albergottie aff. ¶ 9; doc. 90-4 at 9, 10, 45). Ms. Albergottie advised the plaintiff to alert a corrections officer if any swelling, pain, or discoloration appeared (doc. 90-4 at 45).

Ms. Albergottie next examined the plaintiff's toe on July 24, 2023, and an x-ray on that day showed a dislocation of his left big toe (*id.* at 56; doc. 90-3 at 3, Albergottie aff. ¶ 11). Because of this x-ray, Dr. Garman referred the plaintiff to an orthopedist (*id.*; doc. 90-4 at 56–58). However, two days later, Dr. Garman changed the referral to an emergency referral so the plaintiff could be seen more quickly (*id.* at 60–61; doc. 90-2 at 3, Aiken aff. ¶ 11). The medical defendants did not have authority to refer an inmate to an outside provider because the Mediko doctors dictate the plan of care (doc. 90-2 at 5, Aiken aff. ¶¶ 17–18).

At the hospital on July 26, 2023, the staff provided lidocaine and corrected the toe's dislocation (doc. 90-5 at 21). A new x-ray confirmed that the dislocation correction was successful and revealed a small avulsion fracture in the same toe (*id.* at 37). The hospital released the plaintiff the same day with instructions to use a splint and buddy tape, elevate the foot, apply ice, use ibuprofen, and follow up with an orthopedist (*id.* at 22). However, before a Mediko nurse can follow an outside provider's orders, the nurse must obtain approval from a Mediko doctor after that doctor reviews and enters the orders (doc. 90-2 at 4, Aiken aff. ¶ 14). The Mediko doctors often change "the orders to fit the needs of the patient and the resources, policies, and security concerns within the jail" (*id.* at 5, ¶ 15).

On July 31, 2023, Mediko issued a special accommodation form for the plaintiff to use a soft splint and boot until his toe healed (doc. 90-4 at 65). In August 2023,

4

the plaintiff submitted several sick call requests related to the treatment of his toe, and the records show that he received medical care in response to all of these requests (*id.* at 22–25), except for one for which he declined treatment (*id.* at 24, 37).

The plaintiff continued to submit sick call requests in September 2023, and he was referred for additional treatment each time[3] (*id.* at 13–15, 18). The plaintiff also submitted a medical grievance about never receiving treatment or a return of an alleged September 8, 2023, sick call request, but there is no record of a sick call request on that date (*id.* at 16–17). He did submit a sick call request on September 4, 2023, and the staff saw him and sent a response to this request on September 6, 2023 (*id.* at 15–16). On September 25, 2023, Ms. Aiken learned that Ms. Albergottie did not administer the plaintiff's hydrocortisone cream during a medication pass, and Ms. Albergottie returned about an hour later to apply the cream (*id.* at 43; doc. 90-3 at 3, Albergottie aff. ¶¶ 16–18). Ms. Albergottie testified that this mistake was inadvertent, and that the plaintiff suffered no harm from this approximately one-hour delay (*id.* at ¶ 19).

On October 18, 2023, Dr. Lawson recommended that the plaintiff use tennis shoes and indicated in his notes that the plaintiff stated he had tennis shoes at home that a family member could bring to the Detention Center (doc. 90-4 at 7, 47). On October 19, 2023, the nursing staff notified Col. Grant of the doctor's recommendation (*id.* at 46). On October 20, 2023, the nursing staff informed the plaintiff that Col. Grant permitted the plaintiff to purchase tennis shoes from the jail's commissary but his family could not bring them into the jail (*id.* at 19). In response, the plaintiff filed two inmate request/complaint forms requesting his family bring in his shoes, and Col. Grant reiterated that they could not

---

[3] He also submitted a sick call request on September 30, 2023, but this request was not for medical treatment (doc. 90-4 at 20). Rather, the plaintiff noted that the doctor had cleared him from using the boot on September 27, 2023, so he requested that someone retrieve the boot so that he would not be charged with contraband (*id.*). The staff responded that the plaintiff should "give boot to property per officer not medical"(*id.*).

5

and told the plaintiff to inform her if the plaintiff could not find "orthotic shoes to choose from" on the commissary list (doc. 90-6 at 1–2). On October 25, 2023, the plaintiff said that he could not find "orthopedic shoes" on the commissary list, and Col. Grant promised to find him an advertisement with a picture of the shoes (*id.* at 3). On November 1, 2023, the plaintiff stated that he never received the advertisement and requested a transfer to another facility, and Col. Grant responded with a copy of the advertisement and that she would be ignoring the transfer request (*id.* at 4–5). On November 29, 2023, Dr. Lawson evaluated the plaintiff and noted that security would not allow his family to bring shoes into the Detention Center and the plaintiff would have to purchase them through the kiosk (doc. 90-4 at 4). The plaintiff eventually received the shoes but complained about their comfort, and Col. Grant responded that she could not order new shoes for the plaintiff unless the plaintiff had sufficient funds in his account (doc. 90-6 at 7). The medical defendants testified that they did not have the authority to override Col. Grant or the Mediko doctors and permit the plaintiff's family to bring shoes into the facility (doc. 90-2 at 4–5, Aiken aff. ¶¶ 14–16; doc. 90-3 at 4, Albergottie aff. ¶¶ 21–22).

In their motion for summary judgment, the medical defendants argue that the court should dismiss the plaintiff's claims because there is no evidence that the medical defendants were deliberately indifferent to the plaintiff's medical needs (doc. 90-1 at 11–19). Specifically, they claim that the plaintiff did not have a serious medical condition, the medical defendants had no objective knowledge of a serious medical condition, the medical defendants provided appropriate care and treatment within their scope of practice, the plaintiff cannot prove the medical defendants caused his alleged injuries, and punitive damages are unavailable to the plaintiff as a matter of law (*id.*). In response, the plaintiff argues that "[t]he defendants in these matter [sic] shall be or is directly responsible for the deprivation of my constitutional rights" and "these reason [sic] above alone should show that the defendants in this matter should not be dismissed because they are the ones

directly involved" (doc. 105 at 2). He also references three case names, without any citations, but does not provide further argument in support of his response (*see id.*). The plaintiff attached a memorandum to his response wherein he states that he submitted his "response on time . . . on approximately March 25, 2025 to Defendants," but he did not provide any evidence to oppose the medical defendants' motion for summary judgment (doc. 105-1 at 1).

### III. APPLICABLE LAW AND ANALYSIS

#### A.     *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient

to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### B.     Pretrial Detainee Medical Indifference Claim

A pretrial detainee's claim for deliberate indifference to a medical need is properly brought under the Fourteenth Amendment. *Moss v. Harwood*, 19 F.4th 614, 624 (4th Cir. 2021). To establish this claim, a pretrial detainee must show that (1) he had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed. *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023) (citing *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017); *Gordon v. County of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018); *Miranda v. County of Lake*, 900 F.3d 335, 352–53 (7th Cir. 2018); *Brawner v. Scott County*, 14 F.4th 585, 596–97 (6th Cir. 2021)). A condition is a serious medical need if it is "diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).

In holding that pretrial detainees are no longer required to show subjective knowledge of an excessive risk of harm, the Court of Appeals for the Fourth Circuit stated:

> The objective test we adopt today differs from our prior subjective test in one respect only. The plaintiff no longer has to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm. That showing remains sufficient, but it is no

> longer necessary. Now, it is sufficient that the plaintiff show that the defendant's action or inaction was "objectively unreasonable," [citing *Kingsley v. Hendrickson,* 576 U.S. 389, 397 (2015)]: that is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly. Or as the Supreme Court put it when describing civil recklessness in *Farmer*, it is enough that the plaintiff show that the defendant acted or failed to act "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Farmer*, 511 U.S. at 836, 114 S.Ct. 1970. We go no further.
>
> To be clear, it is still not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee. *See Kingsley*, 576 U.S. at 396, 135 S.Ct. 2466; *Brawner*, 14 F.4th at 596; *Gordon*, 888 F.3d at 1125; *Miranda*, 900 F.3d at 353–54. Negligence was not enough before, *Stevens*, 68 F.4th at 931, and it is not enough now.

*Short*, 87 F.4th at 611–12.

Here, there is no evidence that any of the medical defendants were deliberately indifferent to the plaintiff's serious medical needs. Under the first *Short* factor, viewing the evidence in a light most favorable to plaintiff, the plaintiff did suffer from a serious medical condition – a dislocated toe with a small fracture (doc. 90-5 at 37). While the medical defendants argue that he was appropriately treated and recovered from this injury, it was still a serious injury that posed a substantial risk of serious harm to the plaintiff.

However, the plaintiff has failed to produce sufficient evidence under the remaining factors to find that the medical defendants were deliberately indifferent to the plaintiff's serious medical need. As to the second *Short* factor, there is no evidence that the medical defendants "intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that [the plaintiff's] condition posed . . . ." 87 F.4th at 611. In his amended complaint, the plaintiff alleges that he requested muscle relaxers, three ice packs daily, something to elevate his foot, and orthopedic shoes and that he "only received one ice pack total and . . . a blanket one month later" (doc. 33 at 6). He further alleges that the medical defendants refused to treat him or respond to his sick calls and that they

delayed his treatment (*id.* at 7–8). However, he fails to produce any evidence that the medical defendants were to blame for these complaints. To the contrary, the medical records and testimony show that the medical defendants responded to all requests for treatment regarding the plaintiff's injured toe. Neither of the medical defendants denied or unreasonably delayed the plaintiff's sick call requests, including those for ice packs, something to elevate his foot, and a blanket (doc. 90-4 at 13–25). After he submitted his first sick call request, Ms. Aiken took the plaintiff to Dr. Garman the same day and provided the treatment Dr. Garman ordered (doc. 90-3 at 2, Albergottie aff. ¶¶ 8–10). Dr. Garman sent the plaintiff to the emergency room to receive treatment faster than if he had waited for an orthopedic appointment, and Ms. Aiken escorted the plaintiff to the van that took him to the hospital (doc. 90-2 at 3, Aiken aff. ¶¶ 10–11).

While Ms. Albergottie did fail to apply the plaintiff's hydrocortisone cream during her medicine pass on September 25, 2023, she returned about an hour later to apply the cream after she realized her mistake (90-3 at 3, Albergottie aff. ¶¶ 15–19), and the plaintiff has produced no evidence that this error was intentional, knowing, or reckless or that it caused him any harm. As for the muscle relaxers, the medical defendants, as nurses, do not have the authority to prescribe medication and can only follow the jail provider's orders (doc. 90-2 at 4–5, Aiken dep. ¶¶ 14–15). There is no evidence that any of the jail providers ordered muscle relaxers (*see generally* doc. 90-4).

Regarding the orthopedic shoes, there is no evidence that the medical defendants prevented the plaintiff from receiving these shoes. After Dr. Lawson recommended tennis shoes (doc. 90-4 at 7, 47), the nursing staff promptly notified Col. Grant of the doctor's recommendation (*id.* at 46) and told the plaintiff that Col. Grant would only allow the plaintiff to purchase the shoes from the commissary (*id.* at 19). It was Col. Grant, not the medical defendants, who prevented the plaintiff's family from bringing the shoes to the Detention Center (*see* doc. 90-6). The medical defendants had no authority

to override Col. Grant's instructions (doc. 90-2 at 5, Aiken aff. ¶¶ 14–16; doc. 90-3 at 4, Albergottie aff. ¶¶ 21–22).

Likewise, the plaintiff fails to satisfy the third *Short* factor because there is no evidence of the medical defendants' action or inaction that could have posed an unjustifiably high risk of harm to him. As to the fourth *Short* factor – the plaintiff's harm – there is no evidence that the plaintiff suffered emotional damage, arthritis, nerve damage, or other alleged harm.

In support of his position, the plaintiff lists three cases – *Short*, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (holding that "*intentionally* denying or delaying access to medical care" constitutes deliberate indifference) (emphasis added), and *Bryant v. City of L.A*[4] (doc. 105 at 2). However, these cases do not change fact that the plaintiff failed to produce sufficient evidence to satisfy all of the *Short* factors.

Although the plaintiff was not satisfied with his medical treatment, "[t]he mere failure to treat all medical problems to a prisoner's satisfaction, even if that failure amounts to medical malpractice, is insufficient to support a claim" for deliberate indifference. *Peterson v. Davis*, 551 F. Supp. 137, 146 (D. Md. 1982). The undersigned therefore concludes that the record before the court is insufficient to support a finding that the medical defendants were deliberately indifferent to the plaintiff's serious medical need. *See,*

---

[4] The undersigned cannot find a case with this name that "[h]eld that denying someone medical care and forcing them to walk on a broken ankle is deliberate indifference" (*see* doc. 105 at 2). Nonetheless, the undersigned has found several cases supporting the plaintiff's argument that being forced to walk on a broken ankle is deliberate indifference. *See, e.g., Arreola v. Godinez*, 546 F.3d 788, 792 (7th Cir. 2008) (holding that a "no crutches" policy that forces inmates to walk on their broken ankles is deliberate indifference); *Hernandez v. Lord*, No. 3:19-cv-00151-RRB, 2024 WL 3757255, at *9 (D. Alaska Aug. 9, 2024) (finding that officers' "ignoring repeated requests for pain medication for nine days; forcing [plaintiff] to walk up stairs in restraints with a broken ankle; and preventing [plaintiff] from access to crutches for twelve days" constitutes deliberate indifference); *Berthelot v. Bailey*, No. 7:13-cv-01020-LSC, 2014 WL 935338, at *4 (N.D. Ala. Mar. 10, 2014) (permitting the plaintiff's deliberate indifference claim to proceed where the plaintiff alleged that the defendants forced him to walk on a broken ankle). However, here, the plaintiff has produced no evidence that any of the medical defendants forced him to walk on his broken and dislocated toe, and accordingly, these cases do not apply.

*e.g., Lamson v. Koon*, No. 9:18-cv-0812-DCC-BM, 2019 WL 9341411, at *10 (D.S.C. July 16, 2019) (noting that plaintiff could not support his deliberate indifference to a serious medical need claim where he "provided no medical evidence . . . to support his own lay opinion that this was a serious enough complaint that . . . amounted to a violation of his constitutional rights"), *R&R adopted in relevant part by* 2020 WL 2393928 (D.S.C. Apr. 29, 2020).

## IV. CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the undersigned recommends that the district court grant the medical defendants' motion for summary judgment (doc. 90).

IT IS SO RECOMMENDED.

s/Kevin F. McDonald  
United States Magistrate Judge

June 23, 2025  
Greenville, South Carolina

**The attention of the parties is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 250 East North Street, Room 2300
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).